IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| In Re ENRON CORPORATION SECURITIES, DERIVATIVE & "ERISA" LITIGATION, | § § § | MDL 1446 |

| | | |
|---|---|---|
| PAMELA M. TITTLE, on behalf of herself and a class of persons similarly situated, ET AL., | § § § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-01-3913 |
| | § | CONSOLIDATED & COORDINATED CASES |
| ENRON CORP., an Oregon Corporation, ET AL., | §(H-01-4060; H-01-4063; H-01-4089; § H-01-4108; H-01-4125; H-01-4128; § H-01-4208; H-01-4209; H-01-4299; | |
| Defendants. | § H-01-4326; H-01-0267; H-02-0851; § H-02-1058; H-02-2160; H-02-3754; § H-02-3942; H-03-2257) | |

| | | |
|---|---|---|
| ENRON CORP. SAVINGS PLAN, et al., | § § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-07-4081 |
| | § | CONSOLIDATED INTO H-01-3913 |
| HEWITT ASSOCIATES, LLC. | § | |
| | § | |
| Defendant. | § | |

| | | |
|---|---|---|
| ENRON CREDITORS RECOVERY CORP., formerly known as Enron Corp. an Oregon Corp., | § § § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. H-08-1894 |
| | § | CONSOLIDATED INTO H-01-3913 |
| HEWITT ASSOCIATES, LLC, | § | |
| | § | |
| Defendant. | § | |

**OPINION AND ORDER**

Pending before the Court in the above consolidated and related actions are (1) Hewitt Associates, LLC's ("Hewitt's") motion to dismiss Plaintiff's first amended complaint[1] for lack of subject matter jurisdiction (instrument #1364 in H-01-3913; #14 in H-07-4081); (2) Hewitt's motion to quash discovery and motion for protective order (#26 in H-07-4081); and (3) Hewitt's motion to dismiss H-08-1894 due to prior, first filed action in the Circuit Court of Lake County, Illinois (#3 in H-08-1894).[2]

## I.  Procedural History

There are several interrelated lawsuits and parties involved in this dispute.  The quarrel grew out of Hewitt's role in implementing the distribution of the first tranche of settlement funds of approximately $89 million to Enron Corp. Savings Plan ("Plan") claimants in accordance with the Second Supplemental Amended Allocation Plan (#1220 in *Title*), approved by this Court in the consolidated cases of *Title, et al. v. Enron, et al.*, H-01-3913, and *Elaine L. Chao v. Enron Corp.*, H-03-2257.  Specifically, allegedly retained by the Plan as the Fund Administrator,[3] Hewitt

---

[1] The Original Complaint is #1 in H-07-4081; the First Amended Complaint is #10 in H-01-4081, #1353 in H-01-3913.

[2] Enron's Response is filed in both H-08-1894 (#11) and in *Title* (#1390).  Hewitt's Reply is filed in H-08-1894 (#14).

[3] Although Hewitt disputes that it served as the Fund Administrator, after the issue was raised in a hearing in *Title* on July 27, 2007 regarding Hewitt's miscalculation of the settlement

was responsible for calculating the distributions (*pro rata* shares) of the settlement funds to Claimants.  On January 30, 2007, after a Claimant questioned her allocation, Hewitt admitted that it had erred in calculating the distributions.  Facing a contempt hearing set before this Court, Hewitt also agreed to provide at least some of the funds the Savings Plan needed to help cover the shortfall (#1348 in H-01-3913), an arrangement that is now part of the dispute here.  Although Hewitt stated that it would work toward resolving the problem, it apparently did not provide any new, accurate calculations nor make any progress in curing the erroneous distributions.  Attempts at mediation failed.

Enron Creditors Recovery Corp.("Enron"), formerly Enron Corp., first made this Court aware of the problem with the initial allocation of the settlement proceeds when, on May 29, 2007, Enron filed in *Tittle* a motion for approval of modifications to Second Supplemental Amended Plan of Allocation ("Plan of Allocation") (#1309 in H-01-3913).  Enron accused Hewitt, which Enron claims was the Fund Administrator, of defective calculations[4] that caused a

---

allocations (see transcript, Ex. 1 to # 11 in H-08-1894 and to #1390 in H-01-3913), this Court issued an order that, for the purposes of granting Enron's motion to modify the Second Supplemental Amended Plan of Allocation, found Hewitt was the Fund Administrator.  #1334 at 2, ¶ 5 ("Hewitt Associates LLC ("Hewitt") acted as Fund Administrator pursuant to, and as defined in, the Allocation Plan.") in H-01-3913.

[4] Hewitt was supposed to have used the closing price of Enron stock on December 31, 1997, $41.46, as the base of its

flawed distribution of settlement proceeds to claimants and of
failing to rectify the problem.   Hewitt was paid approximately
$900,000 in fees from the settlement fund for its services, thus
diminishing the amount available for allocation to the claimants by
that sum.   Although Hewitt's counsel admitted responsibility for
the miscalculation in a hearing before this Court on July 27, 2007[5]
and did agree, with its rights reserved, to make a loan to the Plan
to cover the shortfall, as did Enron, efforts to negotiate a
resolution among the parties in *Tittle* failed.

Civil Action No. H-07-4081, *Enron Corp. Savings Plan, et al.
v. Hewitt Associates, LLC* (the "Plan's action" or "Plan's suit")
was filed on November 30, 2007 by the Plan,[6] the Administrative
Committee of the Plan, and the *Tittle* Plaintiffs.   The Complaint
(#1 in H-07-4081) and First Amended Complaint (#10 in H-01-4081,
#1353 in H-01-3913) charge Hewitt with tort claims of negligent
misrepresentation, grossly negligent misrepresentation, negligence,
gross negligence, professional negligence, and breach of contract,

_____

calculations.   Instead it incorrectly valued Enron stock as of
January 1, 1998 (a trading holiday) at $100 per share, and used
that number to begin its calculations.

[5] #11 in H-08-1894 or #1390 in H-01-3913, Ex. 1 at 18, 19,
Transcript of July 27, 2007 hearing.

[6] "Enron is the Plan's named fiduciary within the meaning of ERISA
and administers the Plan through a small number of employees in
Enron's benefits department referred to as the 'Administrative
Committee.'"   Hewitt's motion to dismiss, #3 at 2 in H-08-1894.

i.e., of an agreement drafted by Hewitt and executed by Plaintiffs on July 28, 2006 promising that Hewitt would calculate distributions in accordance with the Plan of Allocation, based on Hewitt's erroneous calculations. Enron purportedly relied on these calculations in distributing approximately $22 million from the settlement fund to Claimants. The Plan and the Administrative Committee of the Plan seek to recover this amount as the Plan's losses in assets and property directly resulting from Hewitt's alleged wrongdoing (the "shortfall").

Plaintiffs in H-07-4081 assert that the Court has diversity jurisdiction under 28 U.S.C. § 1332(a)("The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs and is between--(1) citizens of different States . . . ."), as well as ancillary jurisdiction and jurisdiction under the All Writs Act. Plaintiffs claim that the Plan is a citizen of Delaware, that the Administrative Committee maintains its place of business in and its current members reside in Houston, Texas, and that Hewitt's principal place of business is in Illinois. They also point to the Court's retention of continuing jurisdiction over "any and all disputes" arising out of implementation of the Plan of Allocation in the orders of final judgment and dismissal on May 24, 2005 and September 12, 2005 in *Tittle*:

Without affecting the finality of this Order of Final
Judgment and Dismissal in any way, this Court retains
continuing jurisdiction over: (a) implementation of the
Settlement; (b) any award or distribution of the
Settlement Trust, including interest earned thereon; and
(c) all other proceeding related to the implementation
and enforcement of the terms of the Agreement.

Without affecting the finality of this Judgment, the
Court retains jurisdiction for purposes of implementing
the Agreement and reserves the power to enter additional
orders to effectuate the fair and orderly administration
and consummation of the Agreement and Settlement, as may
from time to time be appropriate, and the resolution of
any and all disputes arising thereunder.

#987, ¶¶ 28 and 30; #1075, ¶¶ 30 and 31.[7]  The issues in the Plan's

suit involve over-allocations and under-allocations to thousands of

*Tittle* Claimants and Plaintiffs insist that the Court retains

jurisdiction to address them.[8]  *See In re Painewebber Ltd.*

*Partnerships Litig.*, No. 94 CV 8547, 2003 U.S. Dist. LEXIS 12581

(S.D.N.Y. July 22, 2001)(district court reserved exclusive

jurisdiction to modify the plan of allocation when issues arose

relating to overpayment and underpayment of settlement proceeds to

class participants).  Therefore, Plaintiffs argue, the Court has

---

[7] They also state that venue is proper pursuant to 28 U.S.C. §
1391(a)(2) because a substantial part of the events giving rise to
Plaintiffs' claims occurred in this judicial district and because
the case arises out of the distribution of settlement proceeds in
accordance with the Allocation Plan (#1220) in the *Tittle*
litigation.

[8] This Court has federal question jurisdiction over *Tittle*, which
is grounded in the Employee Retirement Income Security Act of 1974
("ERISA"). 29 U.S.C. §§ 1001-1461.

jurisdiction over this matter under the doctrine of ancillary jurisdiction[9] and the All Writs Act, 28 U.S.C. § 1651 ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate to aid of their respective jurisdictions and agreeable to the usages and principles of law."). Civil Action No. H-07-4081 was consolidated into *Tittle* by the Court on December 3, 2007 (#2 in H-07-4081; #1338 in *Tittle*).

---

[9] In 1990, 28 U.S.C. § 1367 codified under the name "supplemental jurisdiction" much of the case-law doctrine of "ancillary jurisdiction" ("power of the court to adjudicate and determine matters incidental to the exercise of its primary jurisdiction of an action") and the doctrine of "pendent jurisdiction" ("a principle applied in federal courts that allows state created causes of action arising out of the same transaction to be joined with a federal cause of action even if diversity of citizenship is not present").  28 U.S.C. § 1367; definitions from *Black's Law Dictionary* (6th ed. 1990).  Ancillary jurisdiction will be discussed in detail subsequently.  Section 1367(a), the relevant provision here, provides,

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.  Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

The statute requires that the court have original jurisdiction, either diversity under 28 U.S.C. § 1332 or federal question under § 1331, before it can exercise supplemental jurisdiction.

On June 5, 2008,[10] Hewitt filed *Hewitt Associates, LLC v. Enron Creditors Recovery Corp. f/k/a Enron Corp.* ("the Illinois action"), Cause No. 08-MR-643, in the Circuit Court of Lake County, Illinois and had Enron served on June 9, 2008. The Court has been informed by Hewitt that on June 26, 2008, Enron (an Oregon corporation with its principal place of business in Houston, Texas) removed the Illinois state court suit, on diversity grounds, to the United States District Court for the Northern District of Illinois, Eastern Division, where it is currently pending as Civil Action No. 08-CV-3634.[11] Enron also simultaneously filed a motion to transfer venue to this Court and an emergency motion to extend time to answer in that action.[12] Notice to the Court, #1386 in H-01-3913; #9 in H-08-1894; #30 in H-07-4081.

---

[10] This Court highlights the fact that Hewitt filed its suit **approximately one week** after Enron filed its motion to modify the Second Supplemental Amended Plan of Allocation in *Tittle* (#1309), alerting this Court to, and explaining in detail, Hewitt's role in the erroneous distribution of settlement funds and failed attempts to work out a solution. The Court granted Enron's motion (#1334 on July 27, 2007), and *inter alia* ordered Hewitt to follow specified instructions in an effort to cure the misallocation.

The Court further notes that Hewitt filed its Illinois action six months after the Plan's suit was filed in the Southern District of Texas.

[11] For a copy of the original state-court complaint see Ex. 2, part 1, to #11 in H-08-1894. A copy of the removal notice is Ex. 3, part 1, to #11 in H-08-1894.

[12] See #12 in H-08-1894.

In that Illinois action, Hewitt's Complaint for Declaratory Judgment under section 2-701 of the Illinois Code of Civil Procedure, 735 ILCS 5/2-701, is based on an Administrative Services Agreement (the "ASA"), entered into by Hewitt and Enron on June 1, 2001.[13]  Hewitt claims that the ASA contains "detailed provisions for the sharing and limitation of responsibility for errors and omissions in connection with work performed by Hewitt."  Hewitt asserts that under the ASA, Enron contracted with Hewitt "to provide certain benefit plan administration services to the Plans and the participants" and that the ASA had been "executed in contemplation of Hewitt's taking over record keeping responsibilities for the Plans, including the Enron Corp. Savings Plan."  #7 in H-08-1894, Complaint, ¶¶ 8-9.  As of January 1, 2005, Enron purportedly terminated Hewitt's record keeping services, but Hewitt maintains that the contractual relationship remained in place because Enron and Hewitt executed an "amendment" to the ASA, omitting and changing the scope of Hewitt's services.  *Id.* at ¶ 23 and Ex. B.[14]  In late 2005, Hewitt states that it began assisting

---

[13]  A copy of the ASA is attached to the complaint noted in footnote 11, Ex. 2, part 1, to #11, and Ex. 3 to #14, both in H-08-1894.

[14]  Without getting into the merits of this dispute, which are not relevant to the motions pending here, the Court notes that Enron argues that the ASA was terminated and the new Amendment (see Ex. B to the complaint, Ex. 2 in #11, and Ex. 4 to #14 in H-08-1894) entered into by Enron and Hewitt was far more limited in scope and

Enron in developing a settlement allocation protocol for the first tranche of the *Tittle* settlement fund, which was amended around July 25th of the same year and which extended the term of the ASA to include Hewitt's services on the *Tittle* allocation protocol. *Id*. at ¶¶ 24 and 25 and Ex. C.  Hewitt asks the Illinois court to adjudicate the rights and liabilities of the parties under the ASA, to declare that Enron is obligated to indemnify Hewitt for all losses under the terms of the ASA and for Hewitt's loan (exceeding $1,000,000) to the Plan to allow underpaid or unpaid Claimants to be paid without delay, to declare that Enron is obligated to defend Hewitt against the claims brought by the Plan and the Administrative Committee, and to indemnify Hewitt for damages suffered by Hewitt resulting from Enron's failure to mitigate damages, as required by the ASA.

---

does not apply to Hewitt's role as Fund Administrator for the *Tittle* settlement fund.  See also Ex. 4 (Declaration of Robert W. Jones) to #11 in H-08-1894.  See also letter dated July 25, 2006 (second amendment to the ASA, effective July 1, 2006, attached as Ex. C to the complaint, Ex. 2 in #11 and Ex. 5 to #14 in H-08-1894. Moreover, according to Enron, the Plan's claims against Hewitt are based on the independent retention of Hewitt by the Administrative Committee to perform allocation work as the Fund Administrator in the *Tittle* Litigation, not Hewitt's data  maintenance work under the ASA.  Under the approved Plan of Allocation, the settlement proceeds were to be allocated by the Fund Administrator.  Enron contends that Hewitt and the Administrative Committee entered into a Letter Agreement to perform the allocation work under that Plan of Allocation.

On June 13, 2008, in the Southern District of Texas, Enron filed Civil Action No. H-08-1894, *Enron Creditors Recovery Corp. v. Hewitt Associates, LLC*, seeking a declaratory judgment that the ASA does not apply to this dispute between Hewitt and Plan in H-07-4081 and arising out of Hewitt's miscalculations, that Enron has no duty to indemnify Hewitt for any of the alleged losses Hewitt sustained that were caused by Hewitt's misallocation of the settlement fund (no duty to indemnify Hewitt against any claims brought against Hewitt for its own negligence, gross negligence and breaches of its responsibilities), that Enron is not obligated to pay Hewitt any unrecovered balance of Hewitt's loan to the Savings Plan to fund a portion of the shortfall, and that Enron is not obligated to pay any expenses incurred by Hewitt in defending in H-07-4081.  On June 13, 2008, Hewitt filed its motion to dismiss H-08-1894 due to the prior filed Illinois case.  #14 in H-07-4081.

## II.  Pending Motions

**A. Hewitt's motion to dismiss Plaintiff's first amended complaint in H-07-4081 for lack of subject matter jurisdiction**

According to Hewitt, in H-07-4081 the Court has no subject matter jurisdiction (i.e., no federal question jurisdiction, no diversity jurisdiction, no ancillary jurisdiction and no

jurisdiction under the All Writs Act) over the claims arising from the services agreement between Enron Corp. Savings Plan and Hewitt.

Under Fed. R. Civ. P. 12(b)(1), Hewitt challenges the existence of diversity jurisdiction in H-07-4081, which the Plan asserts:  it claims that Hewitt and the Plan are both citizens of Delaware, and therefore not of diverse citizenship.[15]

Hewitt, a limited liability company, is wholly owned by Hewitt Associates, Inc., which is therefore a member of Hewitt.  *See* #14, Ex. A, Hewitt Associates, LLC's Operating Agreement (stating that Hewitt Associates, Inc. is the sole owner and operator of Hewitt Associates, LLC).  Hewitt Associates, Inc. is a Delaware corporation, as stated in the Plan and the Administrative Committee's Original Complaint (#1) and First Amended Complaint (#10).  The Plan is also a Delaware citizen.

For purposes of diversity jurisdiction under 28 U.S.C. § 1332(a),[16] the citizenship of a limited partnership is determined by the citizenship of all of its partners.  *Corfield v. Dallas Glen*

---

[15] There are no federal law claims for federal question jurisdiction.

[16] The rule of complete diversity of citizenship under 28 U.S.C. § 1332 was established in *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L. Ed. 435 (1806).  "'The concept of complete diversity requires that all persons on one side of the controversy be citizens of different states than all persons on the other side." *McLaughlin v. Mississippi Power Co.,* 376 F.3d 344, 353 (5th Cir. 2004), *quoting Harrison v. Prather*, 404 F.2d 267, 272 (5th Cir. 1968).

*Hills, LP*, 355 F.3d 853, 856 n.3 (5th Cir. 2003).  Although the Fifth Circuit has not yet determined whether this rule on partnership citizenship applies to limited liability companies, *Island Park Estates LLC v. Brack*, 2006 WL 3448624, *2 (S.D. Tex. 2006), all the Circuit Courts of Appeals that have addressed the question have held that the citizenship of a limited liability company for purposes of § 1332(a) is determined by the citizenship of its members.  *See Pramco, LLC ex rel. CFSC Consortium, LLC v. San Juan Bay Marina, Inc.*, 435 F.3d 51, 54-55 (1st Cir. 2006); *Handelsman v. Bedford Village Assocs. Ltd. Partnership*, 213 F.3d 48, 51-52 (2d Cir. 2000); *General Technology Applications, Inc. v. Exro Ltda*, 388 F.3d 114, 120 (4th Cir. 2004); *Homfeld II, LLC v. Comair Holdings, Inc.*, No. 01-1151, 53 Fed. Appx. 731, 732-33, 2002 WL 31780184, *1 (6th Cir. 2002); *Cosgrove v. Bartolotta*, 150 F.3d 729, 731 (7th Cir. 1998); *GMAC Commercial Credit LLC v. Dillard Dept. Stores, Inc.* 357 F.3d 827, 829 (8th Cir. 2004); *Johnson v. Columbia Props. Anchorage, L.P.*, 437 F.3d 894, 899 (9th Cir. 2006); *Rolling Greens MHP, L.P. v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004).  The same is true of decisions of some federal district courts in Texas.  *See, e.g., Deep Marine Technology, Inc. v. Conmaco/Rector L.P.*, 515 F. Supp. 2d 760, 765 (S.D. Tex. 2007)(Werlein J.); *Kinder Morgan Liquids Terminals, LLC v. Ponns & Co.*, No. Civ. H-06-3225, 2006 WL 3691192, *2 (S.D. Tex.

2006)(Rosenthal, J.).  Without diversity, this breach of services contract dispute is for state, not federal, court, insists Hewitt. Furthermore, whether this case proceeds in federal or state court will have no impact on the Court's ability to enforce its orders in *Tittle*.

Nor, contends Hewitt, does the Court have jurisdiction over the services contract dispute under either the All Writs Act, 28 U.S.C. § 1651(a), or under the doctrine of ancillary jurisdiction. "Federal courts are courts of limited jurisdiction" and have only "that power authorized by the Constitution and  statute." *Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375, 377 (1994), *citing Willy v. Coastal Corp.*, 503 U.S. 131, 136-37 (1992).  "It is to be presumed that a cause lies outside this limited jurisdiction, . . . and that the burden of establishing the contrary rests upon the party asserting jurisdiction. . . ." *Kokkonen*, 511 U.S. at 377 (citations  omitted).   Without  an  independent  basis  for jurisdiction, there is no subject matter jurisdiction over the tort and contract claims asserted in H-07-4081, and the court must dismiss the claims.  *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365 (1978).

Plaintiffs have argued that the contract and tort claims they allege against Hewitt affect the settlement agreements in *Tittle*. Hewitt objects that the claims in this suit are distinct from those

litigated in *Tittle* and that retention of jurisdiction by the Court is not necessary to protect its jurisdiction or enforce judgments in *Tittle*.  The All Writs Act "cannot serve as an independent basis of jurisdiction." *Texas v. Real Parties In Interest*, 259 F.3d 387, 392 (5th Cir. 2001), *cert. denied sub nom. Umphrey v. Texas*, 535 U.S. 1115 (2002).  Hewitt insists that this case is simply "a dispute between Delaware citizens over alleged liabilities arising from the performance of a professional services contract."  #14 at 4 in 07-4081.   In the Plan's action, Plaintiffs have asserted claims for breach of contract, negligence, and gross negligence against Hewitt; Hewitt intends to defend by claiming that Plaintiffs failed to abide by their own contract and Plaintiffs were negligent and grossly negligent in failing to take timely the actions recommended by Hewitt to remedy the effect of the computer error and of the misallocation of the settlement funds.  This suit does not seek to relitigate the *Tittle* case nor to set aside or undermine the settlements in that action.

Nor, insists Hewitt, does the Court have ancillary jurisdiction over this dispute.  Ancillary enforcement jurisdiction exists only when the claims alleged have their own basis for federal court jurisdiction. *Kokkonen v. Guardian Life Ins. Co. of*

- 15 -

*America*, 511 U.S. 375, 381 (1994).[17]   Ancillary enforcement jurisdiction is authorized to protect and enforce federal judgments, for instance by issuance of court attachments, mandamus, garnishments, and the prejudgment avoidance of fraudulent conveyances. *Peacock v. Thomas*, 516 U.S. 349, 356 (1996).   The simple fact that the claims alleged here and the claims in the main action might arise out of a "common nucleus of operative facts" is not relevant to the existence of ancillary jurisdiction. *Id.*

Plaintiffs have claimed the Court has ancillary jurisdiction here because (1) it expressly retained continuing jurisdiction and (2) the case involves allegations of past conduct by Hewitt that will have an impact on the ability of the parties to comply with the *Tittle* settlement.   Hewitt argues that it is well established

---

[17] This Court feels obligated to point out that Hewitt takes this statement out of context.   In *Kokkonen* the Supreme Court held that district courts do not have the inherent power to enforce a settlement agreement entered into by the parties in federal court since such would be a claim for breach of contract for a state court to decide.   511 U.S. at 380-81.   The high court recognized a key exception, however, "if the parties' obligation to comply with the terms of the settlement agreement had been made part of the order of dismissal, either by separate provision (such as a provision 'retaining jurisdiction' over the settlement agreement) or by incorporating the terms of the settlement agreement in the order.   In that event, a breach of the agreement would be a violation of the order, and ancillary jurisdiction to enforce the agreement would therefore exist." *Id.* at 381. Only "[a]bsent such action [as retention of jurisdiction over the settlement contract], however, enforcement of the settlement agreement is for state courts, unless there is some independent basis for federal jurisdiction." *Id.* at 382.   The dismissal orders in *Tittle* did contain such a "retaining jurisdiction" provision.

that to exercise ancillary jurisdiction over a claim against a third-party that is not a party to the main action, "the enforcement proceeding must be a mere continuation of the prior proceeding and not an action based on new grounds." *U.S.I. Properties Corp. v. M.D. Construction Co.*, 230 F.3d 489, 497 (1st Cir. 2000), *citing Anglo-Florida Phosphate Co. v. McKibben*, 65 F. 529 (5th Cir. 1894). Here, Hewitt contends, Plaintiffs are trying to establish new liability against Hewitt and therefore there must be, but there is not, a basis for jurisdiction independent of the *Tittle* action.

## 1. Plaintiffs' Response (#23 in H-07-4081)

The Plan and the Administrative Committee (collectively, the "Plan") point out that in at least two cases, one before this Court with the same lawyers representing Hewitt in this action, Hewitt has admitted that it is a citizen of Illinois for diversity purposes. Under the doctrine of judicial estoppel,[18] the Plan asks

---

[18] On February 1, 2005, Hewitt sued a Delaware corporation in this Court and alleged diversity jurisdiction based on the fact that Hewitt is "an Illinois limited liability company, which has its principal place of business in Lincolnshire, Illinois." Case No. H-04-2415, *Hewitt Associates LLC v. ExpressJet Holdings Inc.*, Hewitt's Second Amended Complaint at 1, attached to #23 in H-0704081 as Ex. A. The Court issued twelve orders in that case and retained jurisdiction until the dispute was resolved on March 27, 2006. #23, Ex. B.

In the second suit, on July 28, 2007 Hewitt asked the United States District Court for the Northern District of Illinois to remand a case because Hewitt was a citizen of Illinois, as was one of the defendants. Ex. C to #23.

the Court to bar Hewitt from claiming a different citizenship now,
purely as a forum shopping strategy.

While both sides agree that the Fifth Circuit has not yet
resolved the question of an LLC's citizenship for diversity
jurisdiction purposes, Plaintiffs cite a number of cases, twelve
from courts in the Fifth Circuit, finding jurisdiction over an LLC
as a citizen of the states in which it has registered and has its
principal place of business.  #23 at 4-6.  Under this rule, Hewitt
is an Illinois citizen.  Plaintiffs argue that LLCs function like
corporations for jurisdictional purposes, not like partnerships.
An LLC is a legal entity separate from its members.  805 Ill. Comp.
Stat. 180/5-1 ("a limited liability company is a legal entity

---

Nothing about Hewitt's corporate structure has changed since
those two cases were filed, insists the Plan. Plaintiffs also note
that Hewitt Associates, LLC's 2005, 2006, and 2007 Form TA-2s filed
with the Securities and Exchange Commission all identify Hewitt as
an Illinois company.  Ex. D to #23.  Plaintiffs suggest that
Hewitt's sudden assertion of Delaware citizenship may violate Fed.
R. Civ. P. 11.  *See Cont'l Ins. Co. v. Constr. Indus. Servs. Corp.*,
149 F.R.D. 451, 456 (E.D.N.Y. 1993); *In re Enron Corp. Sec.
Derivative & "ERISA" Litig.*, 391 F. Supp. 2d 541, 575 (S.D. Tex.
2005)("'The purpose of judicial estoppel is to protect the
integrity of the judicial process by preventing the parties from
playing fast and loose with the courts to suit the exigencies of
self interest.' . . . The three elements of judicial estoppel are
(1) the party's position is clearly inconsistent with a previous
one; (2) the court accepted the previous position; and (3) the
previous position must not have been inadvertent. . . . Moreover
judicial estoppel 'does not require a formal judgment; rather it
only requires that the first court has adopted the position urged
by the party either as a preliminary matter or as part of a final
disposition."), *quoting In re Superior Crewboats, Inc.*, 374 F.3d
330, 334-35 (5th Cir. 2004).

distinct from its members"). Like a corporation, an LLC has a state of registration and has a physical principal place of business. Plaintiffs assert that there is no logical reason for the Court to treat LLCs differently from other corporations. Thus Plaintiffs insist there is diversity jurisdiction here.

Plaintiffs also contend that the Court has both ancillary jurisdiction and jurisdiction under the All Writs Act. Insisting this dispute "is not a freestanding business dispute between the Plan and Hewitt," Plaintiffs maintain that "Hewitt's alleged misconduct as Fund Administrator in *Tittle* and admitted misallocation of almost $22 million in settlement funds in *Tittle* is the *sole* basis for the Plan's claims against Hewitt." #23 at 7 (emphasis in original). For voluntarily acting as Fund Administrator, specifically responsible for carrying out the Plan of Allocation ordered by the Court, Hewitt was paid $900,000 in fees from the settlement funds, monies which otherwise would have gone into the distribution to Plan Claimants. Furthermore, the money needed to correct Hewitt's misallocation must come from Hewitt or from offsets against future settlement distributions in *Tittle* or other Enron-related cases, matters which this action must resolve. Enron and the U.S. Department of Labor have both recognized that Hewitt's gross negligence directly affects the Court's implementation and enforcement of the *Tittle* settlement.

*See* #1309, Enron's Motion for Approval of Modifications to Second Supplemental Amended Plan of Allocation ¶17; and # 1326, Response of the Secretary of Labor to #1309.  Furthermore, this Court specifically retained jurisdiction to hear "any and all disputes" arising out of implementation of the Plan of Allocation.  #987 ¶ 30; #1075 ¶¶ 30 and 31.  If another court hears this dispute, the timing and implementation of this Court's future orders in *Tittle,* as well as the funds available to compensate *Tittle* claimants, would be impacted.  Plaintiffs insist that under the doctrines of ancillary jurisdiction and the All Writs Act, this Court does not have to leave its management of *Tittle* dependent on another court's processes or orders.

Plaintiffs urge the Court to conclude that it has ancillary jurisdiction to hear the Plan's claims against Hewitt because all the claims concern actions that directly affect this Court's implementation of the *Tittle* settlement.  The United States Supreme Court has held that a court may exercise ancillary jurisdiction in two instances or "heads," sometimes related: "'(1) to permit disposition by a single court of claims that are, in varying respects and degrees, factually interdependent"; and (2) to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority, and effectuate its decrees.'"

*Peacock*, 516 U.S. at 354, *quoting Kokkonen*, 511 U.S. at 379-80.[19]

_____

[19]  The first "head" of ancillary jurisdiction has been termed "supplemental jurisdiction," and is generally codified at 28 U.S.C. § 1367(a).  *See Peacock*, 516 U.S. at 354 n.5 ("Congress codified much of the common-law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367.").  It utilizes the "common nucleus of operative facts test of *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966).

The second "head," characterized as ancillary enforcement jurisdiction, is not codified and "recognizes the 'inherent power of federal courts to exercise jurisdiction in order to enforce their judgments in certain situations where jurisdiction would otherwise be lacking.'"  *See, e.g., Myers v. Richland County*, 429 F.3d 740, 746-47 & nn. 3, 4 & 5 (8th Cir. 2005); *Fafel v. Dipaola*, 399 F.3d 403, 412 n.10 (1st Cir. 2005); *Epperson v. Entertainment Express, Inc.*, 242 F.3d 100, 108 (2d Cir. 2001); *Hudson v. Coleman*, 347 F.3d 138, 142 (6th Cir. 2003); *United States v. Alpine Land & Reservoir Co.*, 174 F.3d 1007, 1012 n.5 (9th Cir. 1999); *Futura Dev. of P.R. v. Estado Libre Asociado de P.R.*, 144 F.3d 7, 9 n.1 (1st Cir. 1998).  These courts observe that Congress codified much of the common law doctrine of ancillary jurisdiction in 28 U.S.C. § 1367, under the label "supplemental jurisdiction," but not all.  They point to *Peacock*, in which the Supreme Court stated, "Congress codified *much* of the common law doctrine of ancillary jurisdiction as part of 'supplemental jurisdiction' in 28 U.S.C. § 1367."  516 U.S. at 354 n.5 (emphasis added).   They also point out that *Kokkonen*, the high court in its only mention of the statute in describing the two heads of ancillary jurisdiction, used the signal for "compare," "c.f., 28 U.S.C. § 1367."  511 U.S. at 380.  *See, e.g., Hudson*, 347 F.3d at 142 ("The first category of ancillary jurisdiction identified [in *Kokkonen*] has largely been codified in the supplemental jurisdiction statute, 28 U.S.C. § 1367.  The second category of ancillary jurisdiction is generally referred to as 'ancillary enforcement jurisdiction.'"); *Alpine Land Reservoir Co.*, 174 F.3d at n.5 ("Supplemental jurisdiction under § 1367 is distinct from the equitable doctrine of ancillary jurisdiction, which allows a court to adjudicate related claims 'to manage its proceedings, vindicate its authority, and effectuate its decrees.'"), *citing and quoting Kokkonen*, 511 U.S. at 380.; and *Fafel*, 399 F.3d at 412 (distinguishing the two types of ancillary jurisdiction with respect to § 1367).

The burden of showing that claims fall within either category rests on the party asserting jurisdiction. *Id.* at 354-55.

Under the first head, embodying what is now called "supplemental jurisdiction," ancillary jurisdiction may "extend to claims having a factual and logical dependence on 'the primary suit,' but that primary suit must contain an independent basis for federal jurisdiction. The court must have jurisdiction over a case or controversy before it may assert jurisdiction over ancillary claims." *Peacock*, 516 U.S. at 355, *citing Owen Equipment*, 437 U.S. at 376, and *Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Ancillary jurisdiction permits a court to "protect legal rights or effectively to resolve an entire, logically entwined lawsuit." *Owen Equipment,* 437 U.S. at 377. Significantly, supplemental jurisdiction did not replace a federal court's inherent power to "effectuate its decrees." *Kokkonen*, 511 U.S. at 379-80. *See also In re Texas*, 110 F. Supp. 2d 514, 525 (E.D. Tex. 2000)(Supplemental jurisdiction "is but a subset of ancillary jurisdiction.").

The second head of ancillary jurisdiction is grounded in a court's inherent power to "interpret and enforce its judgment[s]." *Harbor Venture, Inc. v. Nichols*, 934 F. Supp. 322, 323 (E.D. Mo. 1996). *See also Kokkonen*, 511 U.S. at 380 ("[T]he second head of ancillary jurisdiction" relates "to the court's power to protect

its proceedings and vindicate its authority.").[20]  The exercise of
jurisdiction to enforce a settlement agreement falls under the
second head.  *Kokkonen*, 511 U.S. at 380-81.  Nevertheless courts
"do not have inherent power, i.e., automatic ancillary jurisdiction
to enforce an agreement settling federal litigation *unless the
parties' obligation to comply with the terms of the settlement
agreement is made part of the order either by provisions retaining
jurisdiction over the settlement agreement, or by incorporation of
the terms of the settlement agreement in the order* [emphasis added
by this Court]."  *Harbor Venture,* 934 F. Supp. at 323*, citing
Kokkonen*, 511 U.S. at 381.  *See also Hospitality House, Inc. v.
Gilbert*, 298 F.3d 424, 430 & n. 6 (5th Cir. 2002)(same; moreover,
*Kokkonen* "made clear that a district court may have ancillary
jurisdiction to enforce a settlement agreement even where, as in
the instant case, the previous dismissal was not effected by court
order, but rather by the filing of 'a stipulation of dismissal
signed by all parties' pursuant to Federal Rule of Civil Procedure

---

[20] Ancillary enforcement jurisdiction "is a judicial creation,
born of the necessity that courts have the power to enforce their
judgments. . . . Without this ability to enforce judgements
rendered, '[t]he judicial power would be incomplete and entirely
inadequate to the purposes for which it was intended.'"  *S.I.
Props. Corp. v. M.D. Construction Co.*, 230 F.3d 489, 496 & n.5 (1st
Cir. 2000), *citing Kokkonen*, 511 U.S. at 380, and *quoting Bank of
the United States v. Halstead*, 23 U.S. (10 Wheat) 51, 53 (1825).
*See also Peacock*, 516 U.S. at 359 ("Ancillary enforcement
jurisdiction is, at its core, a creature of necessity.").

41(a)(1)(ii)."); *Goins v. Hitchcock Indep. Sch. Dist.*, 424 F. Supp. 2d 902, 907-08 (S.D. Tex. 2003)("Controlling Fifth Circuit authority indicates that the issue of ancillary enforcement of a settlement agreement is properly analyzed under the second head of ancillary jurisdiction recognized in *Kokkonnen*."). This second head of ancillary jurisdiction in a non-statutory doctrine "governed not by rule or statute, but by the control necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious disposition of cases." *Natural Gas Pipeline Co. of Am. v. Energy Gathering, Inc.*, 2 F.3d 1397, 1406 (5th Cir. 1993).

Plaintiffs maintain that the second head of ancillary jurisdiction exists here. The Court's orders approving the settlements satisfy the standard established in *Kokkonen*: the Court expressly retained jurisdiction "for the purposes of implementing the Agreement and reserve[d] the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Agreement and Settlement . . . and resolution of any and all disputes arising thereunder." #987, ¶ 30; # 1075, ¶ 31. Hewitt's misconduct as Fund Administrator has prevented this Court from implementing the *Tittle* settlement in accordance with its orders and is the sole basis of this dispute.

Moreover, Hewitt misconstrues the doctrine of ancillary jurisdiction.

In defining a court's inherent power to enforce its judgments, the Supreme Court has "approved the exercise of ancillary jurisdiction over a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments, including attachment, mandamus, garnishment, and prejudgment avoidance of fraudulent conveyances." *Peacock*, 516 U.S. at 356. Thus the fact that Hewitt was not a party to the *Tittle* lawsuit at the time the instant action was filed does not bar the Court from exercising ancillary jurisdiction over it.[21] Ancillary jurisdiction is particularly appropriate where the court "attempts to execute, or to guarantee eventual executability of, a federal judgment." *Id.* at 357.

Accordingly, federal courts have held that state law claims against third parties fall within the federal court's ancillary jurisdiction where necessary to effectuate a settlement or judgment. *See, e.g., Cygnus Telecomms. Tech, LLC v. Totalaxcess.com, Inc.*, 345 F.3d 1372, 1376 (Fed. Cir. 2003);

---

[21] The Plan notes that although Hewitt is not currently a party in *Tittle*, it was named as a defendant in an interpleader action that was filed in this Court on May 27, 2004 and Consolidated with *Tittle*. H-01-3913, # 861.

*Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 411-12 (7th Cir. 2000).

In sum Plaintiffs assert that this Court has ancillary enforcement jurisdiction over this action because the Plan's claims directly affect the implementation of orders over which this Court retained continuing jurisdiction.  They argue that it is thus improper to leave this Court "dependent on state courts to enforce federal judgments, thereby jeopardizing the effectiveness of federal decrees." *IFC Interconsult, AG v. Safeguard International Partners, LLC*, 438 F.3d 298, 313 (3d Cir. 2006), *cert. denied*, 127 S. Ct. 136 (2006).

Finally the Plan urges the Court to conclude that the All Writs Act ("the Act"), 28 U.S.C. § 1651 ("The Supreme Court and all courts established by Act of Congress may issue all writs necessary and appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."), authorizes jurisdiction over this action.  The Act serves to fill "the interstices of federal judicial power when those gaps threate[n] to thwart otherwise proper exercise of federal courts' jurisdiction." *Pennsylvania Bureau of Corrections v. U.S. Marshals Service*, 474 U.S. 34, 41 (1985). The Act "extends, under certain circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the

implementation of a court order or the proper administration of justice." *United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977).  The Plan argues that this Court has jurisdiction over Hewitt under the Act because Hewitt's misallocation has frustrated the implementation of this Court's settlement orders in *Tittle* and because the resolution of this action will determine the manner in which this Court redresses the harm caused to the *Tittle* claimants. The Plan points to opinions of four Circuit Courts of Appeals[22] that have held that the Act authorizes federal jurisdiction over state law claims that directly impact the implementation of a settlement

---

[22]   *See Bylinski v. City of Allen Park*, 169 F.3d 1001, 1003 (6th Cir. 1999)(agreeing with district court that "the All Writs Act, which gives federal courts the 'authority to remove an otherwise unremovable state court case in order to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained."), *cert. denied*, 527 U.S. 1037 (1999), *overruled in part, Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 33-34 (2002)(neither ancillary enforcement jurisdiction over the consent judgment nor the All Writs Act can provide a basis for remand jurisdiction); *Xiong v. State*, 195 F.3d 424, 426 (8th Cir. 1999), *overruled in part, Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28; *In re VMS Sec. Litig.*, 103 F.3d 1317, 1323-24 (7th Cir. 1996)(authorizing the district court "in exceptional circumstances [to] use all its Writs authority to remove an otherwise unremovable state court case in order to effectuate and prevent the frustration of orders it had previously issued"), *called into question by Texas v. Real Parties In Interest*, 259 F.2d 387, 392-93 (5th Cir. 2001); and *Yonkers Racing Corp. v. City of Yonkers*, 858 F.2d 855, 864 (2d Cir. 1988), *cert. denied*, 489 U.S. 1077 (1989).  This Court has provided the case histories, which may not be in accord with the Plan's arguments.

approved by a federal court.[23]   The Plan argues that the Act
provides a basis for jurisdiction here because Hewitt's actions
have interfered with this Court's ability to implement its
settlement order in *Title* and will affect this Court's
implementation of future Enron-related settlements.  The Plan cites
two Southern District of Texas district court opinions holding that
the All Writs Act authorizes jurisdiction over state law claims
involving non-parties which, like Hewitt, played a significant role
in a court-approved settlement.  *In re State of Texas*, 110 F.
Supp.2d 514 (E.D. Tex. 2000)(holding that the Act provided federal
jurisdiction over state proceedings related to state law claims of
fraud, breach of fiduciary duty, conversion, and other misconduct
brought by the State of Texas against private counsel who
represented the State in federal tobacco settlement)[24]; *Chance v.*

------

[23] In *Syngenta Crop*, the Supreme Court ruled that the Act cannot
be used to expand *statutory* removal jurisdiction under § 1441.  537
U.S. at 32.  The Plan notes that subsequent decisions concerning
the scope of the federal removal statute, 28 U.S.C. § 1441, do not
apply to jurisdiction under the Act over actions like the instant
one that were originally brought in federal Court.  The fundamental
principal that the Act can establish jurisdiction over suits
originally brought in federal court remained unchanged.

[24] The Fifth Circuit subsequently reversed this ruling in *Texas
v. Real Parties in Interest*, 259 F.3d 387, 395 n.12 ("The All Writs
Act is a residual source of authority to issue writs that are not
otherwise covered by statute" and that where a statute like § 1441
"specifically addresses the particular issue at hand, it is that
authority and not the All Writ Act, that is controlling.").

*Sullivan*, 993 F. Supp. 565, 567 (S.D. Tex. 1998)(holding that the Act provided federal jurisdiction over plaintiffs' state law breach of fiduciary duty and legal malpractice claims against class counsel involved in federal class action settlement.).[25]

**2.   Hewitt's Reply**

Hewitt reiterates that there is no diversity jurisdiction because Hewitt and the Plan are citizens of Delaware.

---

[25]     This Court also questions the "alternative" holding in *Chance* that the federal district court had jurisdiction under the Act because it allowed removal of an otherwise unremovable state court case "to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained." 993 F. Supp. at 568.

The state-court suit in *Chance* asserted state-law claims arising from the alleged malpractice of an attorney during representation of the plaintiffs in a tobacco class action in federal court.  Even though the claims asserted were all under state law, the district court  determined that it had federal question jurisdiction under 28 U.S.C. § 1331 because "the state claims are inescapably infused with the overriding federal concerns" at the center of the federal class action and '[c]onsideration of the allegations in this case will entail an inextricably intertwined analysis of the Plaintiffs' settlement agreement within Phillips." *Id.* at 567.

The law has been clarified since *Chance* was issued in 1998. The Act does not create an independent source of federal jurisdiction. *Goss Intern. Corp. v. Man Roland Druckmaschinen Aktiengesellschaft*, 491 F.3d 355, 364 (8th Cir. 2007), *citing Syngenta Crop*, 537 U.S. [at] 31 (declaring the All Writs Act does not establish the original jurisdiction to support removal jurisdiction).  The Act does authorize injunctions barring state court actions that could impinge on the federal court's "jurisdiction or authority over an ongoing matter," but it does not provide the federal court with an independent grant of jurisdiction; it limits the court to "issuing process 'in aid of' its existing statutory jurisdiction, without enlarging that jurisdiction. *Achtman v. Kirby, McInerney & Squire, LLP*, 464 F.3d 328, 333-34 (2d Cir. 2006)(citations omitted).

As for the judicial estoppel argument, Hewitt explains that it filed *Hewitt Associates, LLC v. ExpressJet* before the emergence of the rule that the citizenship of each member of the LLC counts for purposes of diversity.  In the second suit, *Hewitt Associates, LLC v. Towers Perrin, et al.*, Hewitt argued in favor of remand to state court because it and two of the defendants were citizens of Illinois; that it was a citizen of Delaware also was not relevant there.

Furthermore, maintains Hewitt, neither the doctrine of ancillary jurisdiction nor the All Writs Act confers jurisdiction here.  Hewitt argues that Plaintiffs' asserted factual basis for the exercise of that jurisdiction does not exist:  the parties in *Tittle* have already acted to rectify the misallocation of settlement proceeds among claimants by filing motions requiring Hewitt to provide funds to the Plan, and those motions were resolved to the satisfaction of all, as reported to the Court on March 13, 2008 (#1370).  Enron's motion to require initial Fund Administrator to provide funding for upcoming corrected allocation (#1346)(mooted by #1370) and the Secretary of Labor's motion to show cause why Hewitt should not be held in contempt (#1348)(withdrawn, #1370).[26]

---

[26] This Court notes that one of the motions was mooted and one withdrawn (#21 in H-07-4081; #1370 in H-01-3913) because the Court granted a joint motion to stay so that Hewitt and Enron could

Hewitt also claims that Plaintiffs have misapplied the doctrine of ancillary jurisdiction.  While Plaintiffs appear to rely on the second head of ancillary jurisdiction, they also argue that they do not have to establish any independent basis in this case for federal jurisdiction.  The Supreme Court makes clear that under the first head, where claims have a factual and logical dependence on the primary suit, there must be an independent basis for federal jurisdiction in that primary suit and the claims must be brought in that ongoing suit not in a subsequent proceeding. *Peacock*, 516 U.S. at 355.  The Supreme Court observed that it has approved the exercise of ancillary jurisdiction under the second head, "for the exercise of a federal court's inherent power to enforce its judgments," in "a broad range of supplementary proceedings involving third parties to assist in the protection and enforcement of federal judgments-including attachment, mandamus, garnishment, and prejudgment avoidance of fraudulent conveyances. *Id*. at 356.  Nevertheless, insists Hewitt, such ancillary jurisdiction is limited to situations where the respondent had a judgment against it in the original action:  "We have never

---

attempt to work out the misallocation dispute.  See instrument #19 in H-07-4081 granting a joint motion to stay for sixty days (#17) in H-07-4081; #1368, granting #1367 in *Tittle*.  As the record evidences, that effort was unsuccessful, the Court issued its order requiring Hewitt to perform specified actions, and this group of lawsuits are now competing over the dispute.

authorized the exercise of ancillary jurisdiction in a subsequent lawsuit to impose an obligation to pay an existing federal judgment on a person not already liable for that judgment." *Id.* at 357. "The enforcement proceeding must be a mere continuation of the prior proceeding and not an action based on new grounds." *U.S.I. Properties Corp. v. M.D. Const. Co.*, 230 F.3d 489, 497 (1st Cir. 2002), *citing Anglo-Florida Phosphate,* 65 F. 529; *Real Parties in Interest*, 259 F.3d at 391 n.8.  It is undisputed that Hewitt was never made a party to the *Tittle* action and did not have its rights and responsibilities adjudicated in that suit.  Otherwise there would be no need for the Plan to have brought this action seeking to establish Hewitt's contractual and tort liability.

Finally, argues Hewitt, Plaintiffs have not and cannot show authority for the proposition that the All Writs Act provides a federal court with subject matter jurisdiction over a breach of contract or business tort claim simply because the claims arise out of services relating to the administration of the settlement of a separate class action suit.  A plaintiff invoking the All Writs Act must demonstrate that the case has an independent basis for subject matter jurisdiction.  Furthermore, a court's authority under the Act is limited to situations where the issuance of a writ, e.g., an injunction, is "necessary to the preservation or exercise of its

subject matter jurisdiction." *ITT Com. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978).

### 3. Court's Ruling

First, the Court agrees with Hewitt that all the federal appellate courts that have addressed the issue have concluded that the citizenship of a limited liability company is determined by the citizenship of all its members. *See, e.g., Pramco, LLC*, 435 F.3d at 54-55 (and cases cited therein). Although neither the United States Supreme Court nor the Fifth Circuit has ruled on the question, this Court will follow this "well-established" rule. *Id.* at 55. Thus the Court lacks diversity jurisdiction over the the Plan's action, H-07-4081, because Hewitt's member and owner, Hewitt Associates, Inc., is a citizen of Delaware, as is the Plan.

Second, even without Hewitt's explanation of its asserted citizenship in previous cases, the Court is not persuaded that it has diversity jurisdiction by application of judicial estoppel, as the Plan urges. The Fifth Circuit has observed, "[W]e are especially wary of applying judicial estoppel to create subject matter jurisdiction in federal courts." *Lara v. Trominski*, 216 F.3d 487, 495 n.9 (5th Cir. 2000), *citing Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 14 (1st Cir. 1999)("[C]ourts have been cautioned to give careful consideration to the application of judicial estoppel when subject matter jurisdiction is at stake."),

*citing* 18 Wright, Miller & Cooper, Fed. Practice & Procedure § 4477 at 784 (1981 and 1999 Supp.).[27] *See also Creaciones Con Idea, S.A. de C.V. v. Mashreqbank PSC*, 232 F.3d 79, 82 (2d Cir. 2000)("[W]e note that 'principles of estoppel do not apply' to questions of subject matter jurisdiction."), *citing Insurance Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982)("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court."); *Da Silva v. Kinsho International Corp.*, 229 F.3d 358, 361-62 (2d Cir. 2000)("[T]he parties, in Justice Jackson's memorable phrase, have 'changed positions as nimbly as if dancing a quadrille.' . . . However, their prior litigating positions do not preclude either side from asserting its current position since the issue of subject matter jurisdiction is one we are required to consider, even if the parties have ignored it or, as here, have switched sides on the issue."), citing *Mt. Healthy City School Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278 (1977) for the proposition that it "is the obligation of a court, on its own motion, to inquire as to subject matter jurisdiction and satisfy itself that such jurisdiction exists; *Rubin v. Buckman*, 727 F.2d 71 (3d Cir. 1984)("jurisdiction cannot be created by estoppel, even as a sanction for conduct"), *cited for that proposition in*

---

[27] In the current, 2002 edition, the discussion is found at 599 & n.83.

*Mennen Co. v. Atlantic Mutual Ins. Co.*, 147 F.3d 287, 294 n.9 (3d Cir. 1998); *Wight v. Bankamerica Corp.*, 219 F.3d 79, 89-90 (2d Cir. 2000)(concluding that "'special care' should be taken in considering whether judicial estoppel should even apply 'to matters affecting federal subject matter jurisdiction,'" and "irrespective of how the parties conduct their case, the courts have an independent obligation to ensure that federal jurisdiction is not extended beyond its proper limits.); *In re Southwestern Bell Telephone Co.*, 535 F.2d 859, 861 (5th Cir.)("Judicial estoppel principles cannot conclusively establish jurisdictional facts. If facts come to light casting significant doubt on the power of a federal court to hear a pending case, it must, of course, re-examine its jurisdiction."), *modified en banc on other grounds and vacating district court's remand order*, 542 F.2d 297 (5th Cir. 1976), *rev'd on other grounds sub nom. Gravitt v. Southwestern Bell Tel. Co.*, 430 U.S. 723 (1977); *Hajek v. Burlington Northern R.R. Co.*, 186 F.3d 1105, 1108 (9th Cir. 1999)("A party cannot estop itself into jurisdiction where none exists.").

As for ancillary jurisdiction under the two "heads" delineated in *Kokkonen*, 511 U.S. at 379-80, ancillary jurisdiction to enforce a settlement, where the dismissal order expressly retains jurisdiction, falls under the second head, "enabl[ing] a court to function successfully, that is, to manage its proceedings,

vindicate its authority and effectuate its decrees." *Id.* at 380-81.

Two Circuit Courts of Appeals have concluded that unlike the first head, which embodies ancillary jurisdiction under 28 U.S.C. § 1367 and requires that the court have independent original jurisdiction, ancillary jurisdiction under the second "head" apart from the supplemental jurisdiction embodied in the statute, i.e., subject matter "ancillary enforcement jurisdiction," can exist over a separate action for breach of the agreement. The Seventh Circuit and the Eighth Circuit have held that "where a party to a settlement agreement approved by a federal court brings a *new suit* in federal court alleging a breach of the agreement, federal jurisdiction exists over the suit, provided that the federal court incorporated the agreement into its final order or reserved jurisdiction to enforce the agreement." *Montgomery v. Aetna Plywood, Inc.*, 231 F.3d 399, 411 (7th Cir. 2000),[28] *cert denied*, 532 U.S. 1038 (2001), *quoted by and adding the emphasis*, *Myers v. Richland County*, 429 F.3d 740, 747 (8th Cir. 2005).

---

[28] In *Myers*, 231 F.3d at 411, the Seventh Circuit proclaimed, "Precedent in this circuit firmly establishes that the doctrine of ancillary jurisdiction confers federal jurisdiction of a case otherwise outside federal jurisdiction in which the plaintiff seeks to enforce a settlement agreement, as long as the district court incorporated the agreement into its final order or retained jurisdiction to enforced the terms of the agreement. [citations omitted]")

Whether or not the Fifth Circuit would agree with these two appellate courts, this Court concludes that it does have ancillary enforcement jurisdiction over these claims and parties in *Tittle,* into which H-07-4081 and H-08-1894 have been consolidated, under the second "head" of ancillary jurisdiction, established in *Kokkonen*, based on the Court's inherent power "to enable a court to function successfully, that is, to manage its proceedings, vindicate its authority and effectuate its decrees," and thus to enforce its judgments in certain situations where it would not otherwise have jurisdiction. *Kokkonnen*, 511 U.S. at 380; *Goins*, 424 F. Supp. 2d at 907-08. There is no dispute that this Court has original federal question subject matter jurisdiction over *Tittle*, which is grounded in ERISA. The Hewitt-Plan dispute emerged in *Tittle*, as evidenced by the record spanning from May 29, 2007 until now, with a stay to allow for negotiation (#19, granting a joint motion to stay, #16) on March 13, 2008, but no dismissal of that matter.[29] The *Tittle* action, itself, has not been closed.

A key exception to the rule that "federal courts are courts of limited jurisdiction, and are therefore generally precluded from hearing matters that do not involve a federal question or diverse parties" is that "ancillary jurisdiction permit[s] District Courts

---

[29] *See* instruments #1309, 1315-16, 1321-27, 1329-30, 1331-1339, 1341-42, 1344-51, 1353-71, 1381-86, 1390-91.

to retain jurisdiction over post-judgment enforcement proceedings." *Gambone v. Lite Rock Drywall*, Nos. 05-5181 and 05-5284, 2008 WL 2875949, *2 (3d Cir. July 25, 2008).  As noted, both the orders of partial dismissal after settlement at issue here were entered in *Tittle*, and they both expressly retained jurisdiction over implementation and enforcement of the settlement agreement.  #987, ¶¶ 28 and 30; #1075, ¶¶ 30 and 31.  *See Kokkonen*, 511 U.S. at 379-80.  This Court consolidated the Plan's action into *Tittle* on November 30, 2007, and the First Amended Complaint is filed in both suits (#1353 in *Tittle* and #10 in H-07-4081); H-08-1894 was consolidated on June 18, 2008 (#6 in H-08-1894, #1383 in H-01-3913).  Enron and Hewitt were in the process of executing those orders, distributing funds according to the Plan of Allocation from the settlement fund, much of which was in the Court registry,[30] and under those Court orders, when Hewitt's admitted miscalculations resulted in the incorrect apportionment of a substantial portion of

---

[30] At the hearing on July 27, 2007 in *Tittle* (Transcript is Ex. 1 at 17, ll. 6-8, to #11 in H-08-1894 and to #1390 in H-01-3913), Counsel for the *Tittle* Plaintiffs, Lynn Sarko, stated, "I think this Court has jurisdiction over all of this.  This is this settlement.  The money being dealt with here came from the registry of the Court in part, is dealing with a settlement under jurisdiction of this Court. [*sic*]"

those recovery fund.  Indeed after a July 27, 2007 hearing on the
dispute,[31] the Court issued an order the next day stating,

> Substantial issues have arisen pertaining to the
> implementation of the Enron Settlement, the data required
> for the implementation of the $85 million Settlement, as
> well as the initial allocation of the award by Hewitt
> (the "Initial Allocation") and the distribution of the
> Settlement Trust.  These issues include over-allocations
> and under-allocations to thousands of Claimants, and
> therefore impact the fair and orderly administration of
> the Settlements.  The Court has jurisdiction to address
> this matter.  *See In re Painewebber Ltd. Partnerships
> Litigation*, No. 94 CV 8547, 2003 U.S. Dist. LEXIS 12581
> (S.D.N.Y. July 22, 2003).

#1334 at 2, ¶6 in *Tittle*, H-01-3913.  Moreover, Hewitt's fees were
paid out of that settlement fund, and thus both the fees and the
fund could be impacted by the resolution of this dispute.  This
action has a direct relation to the recovered property or assets at
the core of the *Tittle* action, needed to effectuate the
settlements.  Thus Hewitt's actions directly affect implementation
of the settlement and invoke ancillary jurisdiction for this
Court's efforts to enforce its orders.  As long as each of these
actions "qualifies as a post-judgment enforcement proceeding, which
is a proceeding that functions as a means for executing a
judgement, the District Court has subject matter jurisdiction."
*Gambone*, 2008 WL 2875949, at *2.

------

[31] Transcript of the hearing is Ex. 1 to #1390 in *Tittle*, H-01-
3913, and #11 in H-08-1894.

Furthermore, as stated by the Supreme Court in *Peacock*, federal courts have the power to engage in "supplementary proceedings **involving third parties** to assist in the protection and enforcement of federal judgments," but made clear that "recognition of these supplementary proceedings has not . . . extended beyond attempts to execute, or to guarantee eventual executability of a federal judgment." 516 U.S. at 356-57. Hewitt, Enron and the Plan were in the process of following the Plan of Allocation approved by the Court in *Tittle* when the erroneous distribution occurred, and Hewitt, even though a third party, is subject to this Court's ancillary enforcement jurisdiction.

This Court has ancillary enforcement jurisdiction until satisfaction of the settlement, i.e., the settlement funds are distributed according to the approved Plan of Allocation. *Peacock*, 516 U.S. at 356-57 ("Without jurisdiction to enforce a judgment entered by a federal court, 'the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution.'"), *quoting Riggs v. Johnson County*, 6 Wall. 166, 187 ("[T]he jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied.'"). *See also U.S.I. Properties Corp. v. M.D. Construction Co.*, 230 F.3d at 496 ("'The jurisdiction of a Court is not exhausted by the rendition of its judgment, but continues until

that judgment shall be satisfied.'"), *quoting Wayman v. Southard*,
23 U.S. (10 Wheat.) 1, 23 (1825), and *citing Riggs v. Johnson
County.*, 73 U.S. (6 Wall.) 166, 187 (1968)("[I]f the power is
conferred to render the judgment or enter the decree, it also
includes the power to issue proper process to enforce such judgment
or decree."). "Where the postjudgment claim is simply a mode of
execution designed to reach property of the judgment debtor in the
hands of a third party, federal courts have often exercised
enforcement jurisdiction. The principle that federal courts have
jurisdiction over an ancillary action 'to secure or preserve the
fruits and advantages of a judgment or decree rendered,' whether in
law or in equity, is well settled." *U.S.I. Properties*, 230 F.3d at
496. Furthermore, "Federal courts have expressly recognized their
ability to exercise jurisdiction over new parties in supplemental
proceedings where those proceedings concerned property under the
control of the federal court due to an existing judgment, even
where those new parties are nondiverse." *Id*. at 497.[32]

As for jurisdiction under the All Writs Act, this Court agrees
with Hewitt that the Fifth Circuit has consistently ruled that

---

[32] As will be discussed, given its ancillary jurisdiction over this
dispute, the Court concludes that the All Writs Act also authorizes
this Court "to issue such commands . . . as may be necessary or
appropriate to effectuate and prevent frustration of orders it has
previously issued." *United States v. New York Telephone*, 434 U.S.
at 172.

"section 1651(a) is not an independent grant of jurisdiction." *Texas v. Real Parties in Interest*, 259 F.3d at 392, *citing In re McBryde*, 17 F.3d 208, 220 (5th Cir. 1997), and *Clinton v. Goldsmith*, 526 U.S. 529 (All Writs Act does not enlarge jurisdiction); *Singh v. Duane Morris LLP*, ____ F.3d ____, ____ No. 07-20321, 2008 WL 2908912, *4 (5th Cir. July 30, 2008)("It is well established that 'the All Writs Act, by itself, creates no jurisdiction in the district courts' and 'empowers them only to issue writs in aid of jurisdiction previously acquired on some other independent ground.'"), *quoting Brittingham v. Comm'r*, 451 F.2d 315, 317 (5th Cir. 1992). The Act, providing that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions, and agreeable to the usages and principles of law," in cases with an independent source of jurisdiction, "authorize[s] a federal court to 'issue such commands . . . as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued in its exercise of jurisdiction otherwise obtained.'" 28 U.S.C. § 1651(a); *Pennsylvania Bureau of Correction v. United States Marshals Service*, 474 U.S. 34, 40 (1985), *quoting United States v. New York Telephone Co.*, 434 U.S. 159, 172 (1977). Here the independent basis for federal question subject matter jurisdiction is in ERISA-based *Title,* and this Court is authorized

by the All Writs Act to issue orders necessary to effectuate its earlier ones.

As stated by the Second Circuit, the Act "'provides a tool courts need in cases over which jurisdiction is conferred by some other source.'" *Sprint Spectrum LLP v. Mills*, 283 F.3d 404. 413 (2d Cir. 2002), *quoting United States v. Tablie*, 166 F.3d 505, 506-07 (2d Cir. 1999).  The Fifth Circuit "construe[s] the Act narrowly and appl[ies] it only under 'such extraordinary circumstances . . . that indisputably *demand* such a course of action as absolutely necessary to vouchsafe the central integrity of the federal court judgment.'"  *Singh*, 2008 WL 2908912, at *4.  Because the Court has subject matter jurisdiction over the execution of its orders of dismissal with their express provisions retaining jurisdiction, moreover, the All Writs Act also gives it "the power to implement [its] orders . . . by compelling persons not parties to the action to act, or by ordering them not to act."  14A Charles Alan Wright, Arthur R. Miller, & Edward H, Cooper, *Federal Practice and Procedure* § 3691 (3d ed. 1998).  *See also Goss*, 491 F.3d at 364-65 & n.6.;  *Sprint Spectrum LP v. Mills*, 283 F.3d 404, 413-14 (2d Cir. 2002)(The Act permits a district court to assert jurisdiction "under appropriate circumstances, [over] persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the

proper administration of justice."), *citing Assoc. for Retarded Citizens of Connecticut, Inc. v. Thorne*, 30 F.3d 367, 370 (2d Cir. 1994), *cert. denied*, 513 U.S. 1070 (1995).  Thus it has the jurisdiction and the authority to issue orders to third-party Hewitt to effectuate the orders of dismissal pursuant to the Court-approved Plan of Allocation.

For these reasons, the Court concludes that Hewitt's motion to dismiss Plaintiff's first amended complaint for lack of subject matter jurisdiction should be denied.

**B.  Hewitt's motion to quash discovery and motion for protective order in H-07-4081**

Hewitt asks the Court to stay discovery until after it has decided Hewitt's motion to dismiss.  Since that motion has been decided and the first amended complaint remains pending in *Tittle*, and since the sixty-day stay long ago expired, the Court finds the motion to quash and for protective order is moot.

**C.  Hewitt's Motion to Dismiss H-08-1894 Due to Prior First Filed Action**

**1.  First-To-File Rule**

The Fifth Circuit usually follows the "first-to-file" rule in determining which court "should maintain jurisdiction over claims that arise out of the same subject matter but are pressed in different courts." *Igloo Products Corp. v. The Mounties, Inc.*, 735

F. Supp. 214, 217 (S.D. Tex. 1990), citing *West Gulf Maritime Ass'n v. ILA Deep Se Local 24*, 751 F.2d 721, 730 (5th Cir. 1985); *see also Save Power Ltd. v. Syntek Finance Corp.*, 121 F.3d 947, 950 (5th Cir. 1997). "Under the first-to-file rule, when related cases are pending before two federal courts, the court in which the case was last filed may refuse to hear it if the issues raised by the cases substantially overlap." *Cadle Co. v. Whataburger of Alice, Inc.*, 174 F.3d 599, 603 (5th Cir. 1999).[33] "The issues do not have to be identical to be duplicative. A substantial overlap of the content of each suit is sufficient." *Fat Possum Records, Ltd. v. Capricorn Records, Inc.*, 909 F. Supp. 442, 445 (N.D. Miss. 1995). "Complete identity of parties and issues is not required . . . ." *Buckalew v. Celanese, Ltd.*, No. Civ. A. G-05-315, 2005 WL 2266619, *2 (S.D. Tex. Sept. 16, 2005). *See also Save Power Ltd.*, 121 F.3d at 950 ("The rule does not require that cases be identical. The crucial inquiry is one of 'substantial overlap.'"), *citing Mann Manufacturing, Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)("[R]egardless of whether or not the suits here are identical, if they overlap on the substantive issues, the cases would be

---

[33] At the time Hewitt filed its motion, the rule did not apply because its Declaratory Judgment action was filed in Illinois state court; nevertheless since the suit was removed to federal court, it is now applicable.

required to be consolidated in . . . the jurisdiction first seized of the issues.").

"In the absence of compelling circumstances, the Court initially seized of a controversy should be the one to decide whether it will try the case." *Mann Manufacturing, Inc.*, 439 F.2d at 407. Although *Mann Manufacturing* did not identify what constitutes a "compelling circumstance," other courts in the Fifth Circuit have. *Igloo*, 735 F. Supp. at 217.

One recognized "compelling circumstance" exists when the earlier suit was initiated in anticipation of the later suit. *Igloo*, 735 F. Supp. at 217; *Johnson Brothers Corp. v. International Broth. of Painters*, 861 F. Supp. 2d 28, 29 (M.D. La. 1994). "Courts disfavor anticipatory suits because they are an aspect of forum shopping that deprive a potential plaintiffs of his choice of forum." *Frank's Tong Service, Inc. v. Grey Wolf Drilling Co., LP*, No. H-07-2007, 2007 WL 5186798, *3-4 (S.D. Tex. Sept. 7, 2007), *citing inter alia 909 Corp. v. Bolingbrook Police Pension Fund*, 741 F. Supp. 1293 (S.D. Tex. 1990). A potential defendant otherwise could "manipulate declaratory acts as a procedural tool either to secure delay or to select a more beneficial forum." *Id.* "As a matter of equity, a court should consider whether a plaintiff has filed suit in anticipation of being drawn into litigation in another forum." *Id., citing Amerada Petroleum Corp. v. Marshall*,

381 F.2d 661, 663 (5th Cir. 1967); and *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 602 (5th Cir. `983).  While "the simple action of filing a declaratory judgment is not in and of itself improper forum shopping" and while declaratory judgment actions are "inherently anticipatory in nature," "'[t]he Court will generally not allow a party to secure its preferred forum by filing an action for a declaratory judgment when it has notice that another party intends to file suit involving the same issues in a different forum." *St. Paul Surplus Lines Ins. Co. v. Cox Operating, LLC*, 2007 U.S. Dist. LEXIS 89810, *15, *citing Sherwin-Williams Co. v. Holmes County*, 343 F.3d 383, 391-92 (5th Cir. 2003); *Kinetic Concepts*, 2004 WL 2026812, at *4; and *909 Corp. v. Village of  Bolingbrook Police Pension Fund*,741 F. Supp. 1290, 1292 (S.D. Tex. 1990).  "'Lengthy negotiations and the tenor of the party's relations are likely to evidence an expectation that suit will be filed.'" *St. Paul Surplus Lines Ins. Co. v. Cox Operating, LLC*, 2007 U.S. Dist. LEXIS 89810, at *15, *citing Kinetic Concepts*, 2004 WL 2026812, at *4; *Granite State Ins. Co. v. Tandy Corp.*, 986 F.2d 94, 96 (5th Cir. 1992); and *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, [602] (5th Cir. 1983).

In *Igloo*, to determine if the circumstances were "compelling," the district court found that a court may look by analogy to the factors that govern a transfer of venue for forum non conveniens

under 28 U.S.C. § 1404(a). *Igloo*, 735 F. Supp. at 218 (a court may transfer a case "for the convenience of parties and witnesses" or "in the interests of justice", but a plaintiff's choice of venue should not be disturbed absent "such oppressiveness and vexation to a defendant as to be all out of proportion to plaintiff's convenience" or "considerations affecting the court's own administrative and legal problems"), *citing Superior Savings Assoc.*, 705 F. Supp. at 330-31, and *Koster v. Lumbermens Mutual Casualty Co.*, 330 U.S. 518, 524 (1947). *See also Fleetman, Inc. v. Fleet Fuel Sales, Inc.*, No. Civ. A 99-1077, 1999 WL 820547, *3-4 (E.D. La. 1999)(weighing private and public factors delineated in *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501 (1947) in applying first-filed rule and determining a transfer was appropriate under § 1404(a)). The decision whether to apply the first-filed rule lies within the discretion of the court. *West Gulf Maritime*, 751 F.2d at 729.

"The 'first-to-file' rule is grounded in principles of comity and sound judicial administration. The federal courts have long recognized the principle of comity requires federal district courts-courts of coordinate jurisdiction and equal rank-to exercise care to avoid interference with each others's affairs." *Save Power Ltd.*, 121 F.3d at 950 (citations and quotations omitted), *cited for that proposition in American Bankers Life Assurance Co. of Florida*

*v. Overton*, 128 Fed. Appx. 399, 403 n.16 (5th Cir. 2005).   The obvious purpose "'is to avoid the waste of duplication, to avoid rulings which may trench upon the authority of sister courts, and to avoid piecemeal resolution of issues that call for a uniform result.'" *Cadle*, 174 F.3d at 603, *quoting West Gulf Maritime Ass'n v. ILA Deep Se Local 24*, 751 F.2d 721, 729 (5th Cir. 1985).

Nevertheless cases have recognized "'a general policy that a party whose rights are [apparently] being infringed should have the privilege of electing where to enforce its rights.'" *Tape & Technologies, Inc. v. Davlyn Manufacturing Co., Inc.*, 2005 U.S. Dist. LEXIS 8291, *7 (W.D. Texas May 6, 2005), *citing Texas Instruments, Inc. v. Micron Semiconductor, Inc.*, 815 F. Supp. 994, 997 (E.D. Tex. 1999); *Kinetic Concepts, Inc. v. Connetics Corp.*, No. Civ. A. SA-04-CA-0237-XR, 2004 WL 2026812, *3 (W.D. Tex. Sept. 8, 2004); and *Genentech, Inc. v. Eli Lilly & Co.*, 998 F.2d 931, 937 (Fed. Cir. 1993)(noting that "an action for declaration of noninfringement of a trademark should give way to a later-filed suit for trademark infringement"). *See also St. Paul Surplus Lines Ins. Co. v. Cox Operating, LLC*, 2007 U.S. Dist. LEXIS 89810, *15 & n.45 (S.D. Tex. Dec. 6, 2007); *Cummins-Allison Corp. v. Glory Ltd.*, No. Civ. A. 2-03-CV-358TJ, 2004 WL 1635534, *4 (E.D. Tex. May 26, 2004).

Thus in addressing the first-to-file rule, this Court must answer two questions:    (1) are the two pending actions so duplicative that they involve substantially overlapping issues such that one court should decide both, and if so, (2) which of the two courts should take the case?    *Texas Instruments v. Micron Semiconductor*, 815 F. Supp. 994, 997 (E.D. Tex. 1993).

## 2. Hewitt's Motion to Dismiss H-08-1894 Due to Prior First-Filed Action (#3)

Hewitt's moves to dismiss H-08-1894, filed on June 13, 2008, solely on the grounds that there is a prior, first-filed action, i.e., the Declaratory Judgment action that Hewitt filed against Enron on June 5, 2008 in the Circuit Court of Lake County, Illinois.

In that Illinois action, Hewitt seeks an adjudication of rights under the ASA with Enron.    Specifically Hewitt seeks indemnification under the ASA for costs and any damages that Hewitt might incur as a result of one of the actions before this Court, H-07-4081, as well as any damages Hewitt might incur from Enron's failure to mitigate its damages and contributory negligence.[34]

---

[34] Hewitt's motion claims (#3 at 2-3)

The ASA significantly limits Hewitt's liability for losses resulting from the [miscalculation] error, absent gross negligence or intentional misconduct.    This limitation expressly applies to losses incurred by Enron as well as  the Plan and its participants.    The ASA

Hewitt charges that Enron filed its own Declaratory Judgment action, H-08-1894, in this Court on June 13, 2008, only in response to Hewitt's Illinois suit.  Enron did not acknowledge the existence of Hewitt's Illinois action in its cover letter and/or complaint in H-08-1894.  Hewitt's motion argues that because Enron's "copycat" Declaratory Judgment action[35] addresses the same issues as those in Hewitt's Illinois suit ("whether Hewitt is entitled to enforce its liability limits set forth in the ASA and to be indemnified by Enron under the ASA"),[36] Fifth Circuit precedent requires this Court to defer to the previously filed Illinois suit and to dismiss H-08-1894.  *West Gulf Maritime Assoc'n v. ILA Deep Sea Local 24*, 751 F.2d 721, 729-30 (5th Cir. 1985). The purpose of deference to the first filed-action is to prevent duplicative litigation, which could result in conflicting judgments, as well as concerns of comity and judicial economy. *West Gulf Maritime*, 751 F.2d at 728-729.

---

further provides that neither the Plan nor participants shall have third-party beneficiary rights under the ASA, such that when losses arise, Hewitt's entire responsibility would be governed by the terms and limitations of the ASA.  The ASA requires Enron to defend Hewitt against third-party claims, and to indemnify Hewitt against any liability to third parties relating to Hewitt's work, to the extent it exceeds the contractual limit of Hewitt's liability.

[35] #3 at 7.

[36] #3 at 4 in H-08-1894).

The Declaratory Judgment Act, 28 U.S.C. § 2201 ("any court of the United States, upon the filing of an appropriate pleading, *may* declare the rights and other legal relations of any interested party seeking such declaration . . . . [emphasis added]") allows some discretion to the district court.  Hewitt argues that under the Fifth Circuit's nonexclusive, seven-factor test for determining whether to dismiss or stay a declaratory judgment action in deference to a first-filed, state-court action established in *St. Paul Ins. Co. v. Trejo*, 39 F.3d 585 (5th Cir. 1994)[37], Enron's subsequently filed Declaratory Judgment action should be dismissed.  Hewitt asserts that both suits focus on Hewitt's indemnity rights

_____

[37] In *Trejo* the Fifth Circuit noted that although a district court has

> a measure of discretion in deciding whether to entertain a Declaratory Judgment action, that discretion is not unlimited.   The *Trejo* factors to be considered in deciding whether to dismiss such an action are "1) whether there is a pending state action in which all of the matters in controversy may be fully litigated, 2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant, 3) whether the plaintiff engaged in forum shopping in bring the suit, 4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist, 5) whether the federal court is a convenient forum for the parties and witnesses, and 6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy . . . ."

39 F.3d at 590-91.
Enron correctly points out that now that Hewitt's Declaratory Judgment action has been removed to federal court, *Trejo* no longer applies.

under the ASA, the dispute will have no impact on the Plan's suit
or on *Title*, judicial economy will be served by deferring to
Hewitt's suit, because witnesses are spread across the county, no
forum is more convenient for gathering documents and deposing
witnesses, and, most important, Hewitt's indemnity rights are at
stake.  Hewitt maintains that "Enron's reactive filing . . . is an
attempt to circumvent the authority of the Circuit Court of Lake
County and frustrate Hewitt's legitimate choice of forum as a
plaintiff." #3 at 4 in H-08-1894.  Hewitt further insists that the
Illinois suit

> is distinct from the Plan Lawsuit as well as the *Title*
> Action pending before this Court, as it merely seeks an
> adjudication of rights and obligations as between Hewitt
> and Enron for "Losses" as defined by the ASA and
> mitigation expenditures arising from work Hewitt
> performed at Enron's behest pursuant to the ASA.  The
> Lake County Lawsuit has no impact on the *Title*
> settlements, the rights of the *Title* plaintiffs or the
> *Title* Allocation.  It relates only to the contractual
> rights between Hewitt and Enron.

*Id.*

## 3.  Enron's Response (#11 in H-08-1894, #1390 in H-01-3913)

Arguing that H-08-1894 is an interrelated offshoot of the
massive Enron litigation and a "direct by-product" of the *Title*
litigation, as indicated by this Court's *sua sponte* transfer and
consolidation of the instant action into the *Title* suit, Enron
contends that the issues in what Hewitt characterizes as the
"first-filed" case were already being litigated in *Title*, which

has had and still has jurisdiction over these parties and the issues, as well as the operative underlying facts, before Hewitt filed the Illinois suit.[38]  In other words, the *Tittle* litigation is the first-filed of all the related cases involved in this dispute. In fact, Hewitt's Illinois suit, on which its motion is based, was not even the second-filed action because the Plan and Administrative Committee's action (H-07-4081, filed November 30, 2007) had been pending before this Court for over six months before Hewitt filed the state court action on June 5, 2008.

In addition, maintains Enron, there is substantial overlap of content in all the suits.  The Illinois action would not exist but for the facts of the original *Tittle* Litigation and of the subsequent Plan's suit.  Hewitt's Illinois suit, pursuant to the ASA, as amended, between Hewitt and Enron, seeks indemnification from Enron for losses Hewitt sustained because of its mistakes in administering the settlement fund; the indemnification dispute cannot be resolved without carefully considering all of the underlying facts and circumstances at issue in the *Tittle* litigation and in the Plan's action against Hewitt asserting negligence and gross negligence in its performance as Fund Administrator.  Enron argues that the ASA has nothing to do with

---

[38] Enron submits, as Ex. 1 to #11 in H-08-1894, the full transcript of the July 27, 2007 hearing before this Court in *Tittle*.

Hewitt's role as Fund Administrator, and nowhere in the ASA is there any provision that expressly obligates Enron to indemnify Hewitt for Hewitt's own negligence and misconduct.  (The question whether the ASA applies to Hewitt's allocation services is being litigated in the Plan's law suit; if ASA does not apply, Hewitt cannot prevail in the Illinois suit.)  Moreover, the Plan's lawsuit against Hewitt requires a determination whether Hewitt's admitted negligence rose to the level of "gross" negligence, and if so, Hewitt's conduct would not be covered by the indemnification provisions of the ASA, in any event.  Thus the Plan's suit, filed before the Illinois action, will substantially affect whether Hewitt is entitled to any indemnification.  The issues in dispute in H-08-1894 and in Hewitt's Illinois action are directly related to the *Tittle* litigation and to H-07-4081, and this Court has retained jurisdiction over all matters related to the *Tittle* settlement to avoid the kind of inconsistency that could result from actions in other jurisdictions, such as the Illinois case, Enron maintains.

Furthermore, the purposes of the first-filed  rule, i.e., preventing duplicative litigation and the possibility of conflicting judgments, as well as promotion of judicial economy and comity, are served here by keeping H-08-1894 case in the Southern District of Texas, contends Enron.  It maintains that "principles

of comity and judicial economy dictate that this case should proceed here because of this Court's expertise and familiarity with the underlying facts, issues, and parties to the dispute; . . . Hewitt engaged in inappropriate forum shopping and preemptive, anticipatory litigation when it filed the Illinois Action; . . . looking by analogy to the considerations that govern transfer of venue on forum non conveniens grounds, it is abundantly clear that this case belongs in the Southern District of Texas, not Illinois; and . . . the *Trejo* factors relied on in Hewitt's Motion to Dismiss, which is based on the principle that the first-filed *state* court proceedings in particular must control and is therefore technically moot, counsel in favor of denying Hewitt's motion." #11 at 12 in H-08-1894.  In the proceedings in *Tittle*, before the Illinois suit existed, Hewitt had already admitted to this Court that it miscalculated the allocation of the *Tittle* settlement proceeds, causing a shortfall in excess of $21 million in settlement amounts to be paid to the *Tittle* class plaintiffs. *See* Tr. of July 27, 2007 Proceedings, attached as Ex. 1, at 18, 19 to #1390 in H-01-3913 and #11 in H-08-1894.

Enron characterizes Hewitt's Illinois suit as "thinly veiled attempt to have its claims for defense and indemnification" in connection with the Plan's suit against Hewitt heard outside of this district, where the parties have been disputing Hewitt's

misallocation of funds for over a year.  Enron further charges Hewitt with improper anticipatory filing for forum shopping purposes on the grounds that Hewitt refused to go forward with funding the shortfall to the Savings Plan unless Enron and others agreed first to mediate their dispute with Hewitt.  During the preparation for mediation, indeed mediation that Hewitt had requested, Hewitt was planning to file its preemptive suit in an effort to deprive Enron, the real party plaintiff, of its choice of forum, the Southern District of Texas, where Hewitt has already conceded its mistakes.  Hewitt's preemptive filing in Illinois is a "compelling circumstance" warranting denial of Hewitt's motion to dismiss.

Furthermore, Enron contends that the factors used to consider the analogous determination whether to transfer for forum non conveniens under 28 U.S.C. § 1404(a) favor the Texas action. *Igloo*, 735 F. Supp. at 218 (recognizing that consideration of compelling circumstances includes factors affecting the convenience of the parties).  This is a contract dispute, and substantial performance of the contracts and agreements at issue took place in Texas.  Texas is a more convenient forum that Illinois because (1) most of the witnesses with knowledge of the underlying facts or agreements are located here; (2) virtually every aspect of the facts underlying the dispute occurred in Texas and involve the same

factual events that were before the Court in the *Tittle* litigation
and in the Plan's action; (3) Enron's principal place of business
is in Houston, Texas; (4) the settlement fund is here and is part
of the settlement trust still administered by the Court and over
which the Court has explicitly retained jurisdiction; (5) the
settlement fund was administered by Hewitt employees who live and
work in the Houston area at Hewitt's offices in The Woodlands; (6)
the Plan's suit for which Hewitt seeks indemnification in the
Illinois action has been pending in this Court for a year, and the
law applicable to ASA, upon which Hewitt relies in its Illinois
suit, is Texas law.  The only significant connection with Illinois
is that it is Hewitt's principal place of business.

In sum, Hewitt's motion to dismiss H-08-1894 is based solely
on the first-filed doctrine.  Because *Tittle* was the first filed
suit and both H-07-4081 and H-08-1894 have been consolidated into
*Tittle*, the first-filed doctrine does not apply to Enron's
Declaratory Judgment action and Hewitt's motion should be denied.

## 4.  Hewitt's Reply (#14 in H-08-1894)

Hewitt maintains that the issues raised in its Illinois suit,
seeking to adjudicate the parties' respective rights and
obligations under the ASA, are distinct from those raised in
*Tittle*, which has already gone to judgment.  The Illinois case has
nothing to do with the barrage of lawsuits alleging misconduct

against Enron officers and directors in 2001; no ERISA or securities fraud claims are involved.  Furthermore, Hewitt complains that it is not a party to the other cases in Texas[39] and that the issues in its action have no legal or factual overlap with those in the consolidated Enron cases.  Only the Plan's suit has some factual overlap (since the damages the Plan seeks could be subject to indemnity from Enron), and Hewitt has moved to dismiss that suit for lack of diversity jurisdiction.  Hewitt insists that the Illinois suit is related only to the first set of lawsuits "by the mere fortuity that the services that Enron requested of Hewitt under the ASA happened to relate to the allocation of a settlement pending in the Southern District of Texas."  #14 at 12.  Moreover Hewitt's suit is against Enron under the ASA; the Plan is not a party to that contract, did not sign it, and never entered into any contract with Hewitt.  See, in H-08-1894, Ex. 7 to #14 (February 28, 2007 letter from Peter Ross of Hewitt to John Neslage of the Administrative Committee of the Plan), Ex. 8 (March 6, 2007 letter from Enron's Senior Director of Human Resources to Ross).

Furthermore, urges Hewitt, the Illinois suit will have no effect on the Plan's lawsuit because if the Plan is ultimately awarded damages, the outcome of the Illinois suit will determine

---

[39] The Court has previously explained why it has ancillary jurisdiction over non-party Hewitt.

whether  and to what extent Enron is obligated to indemnify Hewitt. This court's familiarity with *Tittle* "does not place this Court in any better position than a judge in Illinois to declare Hewitt's and Enron's contractual rights, Hewitt insists.  Hewitt maintains that its choice of forum should be respected.

Hewitt also claims that there was no threat of litigation by Enron over the indemnity issue when Hewitt filed its Illinois suit.

It also argues that Enron has not shown that private or public factors favor this Court over the Illinois court.  It has not listed specific witnesses or identified particular testimony, but merely made general statements about them.  Hewitt provides a affidavit of Robert Dunlap (Ex. 14-12) showing particular Hewitt witnesses are split between Atlanta and Houston)

## 5. Court's Ruling

After reviewing the record and the applicable law, this Court finds that though characterized as different claims in different procedural postures, the Illinois action and H-08-1894 are duplicative actions, with substantial overlap.  Furthermore, the claims in all three suits before this Court (*Tittle*, H-07-4081, and H-08-1894) and the Illinois action, and their parties, are intertwined so as to require contemporaneous resolution by one court.  Given its ancillary jurisdiction over matters relating to

the effectuation of its prior orders, this Court is the appropriate forum.

In addition, the Court finds that Enron has shown that Hewitt's Illinois Declaratory Judgment action (1) was filed in anticipation of Enron's Declaratory Judgment action in a blatant form of forum shopping and (2) constituted an attempt to circumvent ongoing litigation in *Tittle* in a Texas forum.  Thus Enron has shown a "compelling circumstance" to preclude the first-to-file rule, were it otherwise applicable.

Nevertheless the Court agrees with Enron that the rule does not apply to H-08-1894 because both the Hewitt miscalculation dispute in *Tittle* and the Plan's actions were initiated long before the Illinois action.  As noted, this Court has consolidated the Texas federal actions in *Tittle* and has ancillary jurisdiction over them based on its express retention of jurisdiction in the relevant dismissal orders, as discussed previously.  Furthermore, Enron and the Plan are the real party plaintiffs here and should not be deprived of their chosen forum, especially since these issues have been litigated here for over a year.

Accordingly, for the reasons indicated above, and in light of the fact that H-07-4081 and H-08-1894 have been consolidated into *Tittle*, H-01-3913, and this Court's ancillary jurisdiction over them, the Court

ORDERS that Hewitt's motion to dismiss (instrument #1364 in H-01-3913; #14 in H-07-4081) Plaintiff's first amended complaint for lack of subject matter jurisdiction (instrument #1353 in H-01-3913 and #10 in H-07-4081) is DENIED.  The Court further

ORDERS Hewitt's motion to dismiss H-08-1894 due to prior, first filed action in the Circuit Court of Lake County, Illinois (#3 in H-08-1894) is DENIED.  Finally, the Court

ORDERS that  Hewitt's motion to quash discovery and motion for protective order (#26 in H-07-4081) is MOOT and discovery shall go forward.  The parties shall jointly submit a proposed discovery schedule within two weeks of entry of this order, under the *Tittle* style.

**SIGNED** at Houston, Texas, this 29th day of August, 2008.


_____
MELINDA HARMON
UNITED STATES DISTRICT JUDGE